IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EARNEST EDWARD REED, JR.<br>(AIS# 111914), | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION NO.** |
| v. | ) | **2:05-CV-770-T** |
| | ) | |
| JEAN DARBOUZE, M.D. and PRISON<br>HEALTH SERVICES, | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' SPECIAL REPORT AND ANSWER

COME NOW Defendants JEAN DARBOUZE, M.D. ("Dr. Darbouze") and PRISON HEALTH SERVICES, INC. ("PHS," collectively with Dr. Darbouze, the "Defendants"), pursuant to this Court's August 16, 2005, Order for Special Report and Answer and submit the following Special Report addressing the allegations asserted by Plaintiff EARNEST EDWARD REED, JR. ("Reed"):

## I.    INITIAL DISCLOSURES

Defendants make the following initial disclosures[1] as required by paragraph 2 of this Court's August 16, 2005 Order for Special Report:

A.    The sworn statement of Dr. Jean Darbouze;[2]

---

[1]    This initial disclosures section refers to this Court's requirement to obtain the "sworn statements of all persons having knowledge of the subject matter of the complaint" as required by this Court's August 16, 2005, Order for Special Report and Answer. Order at ¶ 2. The sworn statements attached hereto include any and all present employees of PHS who have knowledge pertinent and/or material to Plaintiff's allegations in this case.

[2]    A true and correct copy of Dr. Jean Darbouze's affidavit is attached hereto as **Exhibit A**.

B.    The sworn statement of Linda Floyd, Certified Registered Nurse Practitioner ("CRNP");[3]

C.    The sworn statement of Kay Wilson, Health Services Administrator ("HSA") at Easterling Correctional Facility ("Easterling");[4] and

D.    The sworn statement of Dr. Willard W. Mosier.[5]

## II.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

### A.    Medical Diagnosis and Treatment Prior to Dr. Jean Darbouze

On or around December 12, 2003, Reed, an inmate currently incarcerated at Easterling, was transferred from Kilby Correctional Facility to Easterling. (See Dep't of Corr. Transfer & Screening Form, Dec. 12, 2003; Infirmary Nursing Progress Notes, Dec. 15, 2003). Soon thereafter, Reed began receiving medical treatment from the medical staff employed by PHS at Easterling. (Id.).

### 1.    Diagnosis and Treatment by Cecilia Cooley Robinson, CRNP

On February 4, 2004, Reed was evaluated by Cecilia Cooley Robinson ("Cooley"), a Certified Registered Nurse Practitioner who is no longer employed at Easterling. (See Problem List, Feb. 4, 2004; Progress Notes, Feb. 4, 2004). Cooley diagnosed Reed as having an abdominal hernia which resulted directly from Reed having suffered a gunshot wound to his abdomen almost twenty (20) years prior in 1987. (Id.). This gunshot wound left a large abdominal, ventricle scar on Reed's mid-section. (Id.). Reed reported this hernia developed while he was lifting weights at Easterling. (See Progress Notes, Feb. 4, 2004). During Cooley's evaluation of Reed, she noted the abdominal, ventricle scar and described the hernia as "bulging,

---

[3]    A true and correct copy of Linda Floyd's affidavit is attached hereto as **Exhibit B**.

[4]    A true and correct copy of Kay Wilson's affidavit is attached hereto as **Exhibit C**.

[5]    A true and correct copy of Dr. Willard W. Mosier's affidavit is attached hereto as **Exhibit D**.

soft, mild tenderness, [and] easily reducible." (Id.). After evaluating Reed's hernia, Cooley recommended that Reed: be moved to the bottom bunk of his living quarters for six (6) months and forego any heavy lifting greater than ten (10) pounds. (Id.; Physicians' Orders, Feb. 4, 2004). At that time, Cooley also stated that an inquiry would be made to the treating physician about evaluating Cooley for "possible surgical correction" and/or "possible surgical consult." (Id.).

### 2.    Diagnosis and Treatment by Dr. Victoria W. Anderson

On February 18, 2004, Dr. Victoria W. Anderson ("Dr. Anderson"), who is no longer employed at Easterling, evaluated Reed's abdominal hernia. (See Progress Notes, Feb. 18, 2004). Dr. Anderson noted the presence of Reed's ventral hernia. (Id.). At this time, Dr. Anderson made note that she planned to request a "surgery referral." (Id.; Physicians' Orders, Feb. 18, 2004). On February 18, 2004, Dr. Anderson requested authorization to refer Reed to a general surgeon for evaluation of his "6 [inch by] 4 [inch] ventral hernia and midline scar." (See Utilization Mgmt. Referral Review Form, Feb. 18, 2004). After reviewing Dr. Anderson's request, former PHS State Medical Director, Dr. Willard W. Mosier, recommended that Dr. Anderson exhaust all non-surgical options and treat the hernia by using a "truss" (i.e., hernia binder) to support Reed's abdomen and back and relieve discomfort caused by the hernia before even contemplating surgical intervention. (See Utilization Mgmt. Referral Review Form, Feb. 20, 2004).

From February 20, 2004 through May 10, 2004, Reed's medical records and complaints are fewer in number. The only records concerning the treatment of Reed's hernia were continued orders that Reed: take the prescribed 600 milligrams of Motrin, continue wearing the hernia binder, avoid gas-producing vegetables and avoid heavy lifting. (See Physicians' Orders,

Mar. 10, 2004; <u>Physicians' Orders</u>, Apr. 15, 2004). The infrequency of Reed's complaints regarding his hernia during this time suggests that the prescribed treatments were working to some degree. During this time, Reed submitted seven (7) total sick call requests, three (3) of which did not make any mention of his hernia. (<u>See</u> <u>Sick Call Requests</u>, Feb. 24, 2004 to May 2, 2004). Of those same requests, Reed requested to see a doctor two (2) times regarding his hernia, and his most severe complaint was that his hernia was "sore." (<u>Id.</u>). As was and continues to be the case with Reed's sick call requests and complaints, he has received a timely medical evaluation and treatment on each occasion. (<u>Id.</u>).

### 3.    Diagnosis and Treatment by Linda Floyd, CRNP

On April 15, 2004, Linda Floyd ("Floyd"), a Certified Registered Nurse Practitioner at Easterling, evaluated Reed, stating that his hernia was caused by a "[gunshot] wound to [the] belly." (<u>See</u> <u>Progress Notes</u>, Apr. 15, 2004; <u>Problem List</u>, Apr. 15, 2004). Reed reported that the "pain [was] worse after heavy lifting." (<u>See</u> <u>Progress Notes</u>, Feb. 15, 2004). At that time, Floyd made the following recommendations: avoid heavy lifting, avoid gas-producing vegetables, take 600 milligrams of Motrin twice a day for ninety (90) days, and stated that Reed's hernia may eventually require "possible referral to [a] surgeon." (<u>Id.</u>).

### B.    Medical Diagnosis and Treatment by Dr. Jean Darbouze

On May 11, 2004, Dr. Jean Darbouze ("Dr. Darbouze") first began treating Reed for discomfort caused by his hernia. (<u>See</u> <u>Progress Notes</u> & <u>Physicians' Orders</u>, May 11, 2004). Dr. Darbouze stated that Reed reported to him that his "hernia [was] getting bigger while lifting weight[s]." (<u>See</u> <u>Progress Notes</u>, May 11, 2004). During the evaluation of Reed, Dr. Darbouze noted the scar on Reed's abdomen and further stated that Reed's abdominal, ventral hernia was in "stable" condition and remained a "chronic" problem. (<u>Id.</u>). During this examination, Dr.

Darbouze recommended that Reed discontinue any heavy lifting. (Id.). From May 11, 2004 to the present date, Dr. Darbouze has continued to treat Reed for his chronic hernia pain and discomfort, and Reed's hernia has remained "uncomplicated." (See Progress Notes, July 9, 2004; see also Progress Notes & Physicians' Orders, May 2004 to July 2005). Various methods have been employed by Dr. Darbouze to treat the hernia, including recommendations that Reed: refrain from heavy lifting for six (6) months at a time; be moved to the bottom bunk in his living quarters; not stand for prolonged periods of time; take the anti-acid Zantac to relieve pressure from the abdomen; take Tylenol for any pain; and wear a hernia binder to support his back and abdomen to relieve any pain and discomfort caused by the hernia. (Id.; see also Special Needs Communication Forms, May 11, 2005 to July 7, 2005; Receipt of Medical Equipment/Appliance Forms, June 28, 2004 to July 7, 2005).

### C.    Grievances Filed by Reed

Reed's first and second grievances were filed within a period of five (5) days, alleging that "I've been at Easterling Corr. Facility for (18) eighteen months and have [repeatedly] requested to have a hernia operation . . . . Dr. Anderson put me on a list to have it corrected but she is no longer here at the facility." (See Med. Compl. Form—Inmate Req., June 9, 2005). Kay Wilson responded to Reed's grievances on June 13, 2005, stating that no physician had concluded that surgery was "medically necessary" to repair his hernia, (See Med. Compl. Form—Resp., June 9, 2005), and that he must allow PHS time to respond to future grievance filings. (See Med. Compl. Form—Resp., June 15, 2005). Reed's final grievance further stated his desire to have his hernia surgically repaired. (See Med. Compl. Form—Inmate Req., July 1, 2005). Kay Wilson clarified the procedures Reed must follow stating:

> if you are having problems[,] it is the policy to follow the
> procedure to access healthcare. . . . The doctor has to find it

medically necessary to write a referral to a surgeon. Then, it has to
be approved/not approved by the medical director. When Dr.
Anderson was here, you were not approved for hernia surgery.

(Med. Compl. Form—Resp., July 1, 2005).

## III.    DISCUSSION

### A.    Reed has failed to allege that Dr. Darbouze and PHS' refusal to refer him to a surgeon amounted to a deprivation of his Eighth Amendment rights.

It is evident from Reed's Complaint that he is attempting to state a claim against Dr.

Darbouze and PHS for an alleged delay and/or denial of medical care. The Eighth Amendment[6]

to the United States Constitution governs the conditions of confinement for prisoners and the

treatment of these prisoners during the term of their incarceration. Farmer v. Brennan, 511 U.S.

825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting Helling v. McKinney, 509 U.S. 25,

31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)); see also Whitley v. Albers, 475 U.S. 312, 327,

106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986); Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S. Ct.

2392, 69 L. Ed. 2d 59 (1981) (writing that the standard of "cruel and unusual punishments"

applies to prison conditions). An alleged Eighth Amendment violation may be actionable under

42 U.S.C. § 1983.[7]  Courts have devoted an extraordinary amount of time clearly defining the

---

[6]      Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . ." See Hamm v. DeKalb County, 774 F. 2d 1567, 1573-74 (11th Cir. 1985). To the extent Defendants rely upon any cases addressing the application of the Fourteenth Amendment in the prison context, such cases are equally applicable in this case.

[7]      42 U.S.C. § 1983 provides, in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

requirements for asserting and succeeding upon a claim for an Eighth Amendment violation under § 1983.

In its well-known opinion in Estelle v. Gamble, the United States Supreme Court instructed that an Eighth Amendment claim only exists when a prison official engages in the "unnecessary and wanton infliction of pain." 429 U.S. 97, 105 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The Estelle Court interpreted this phrase to mean prison officials must not act with "deliberate indifference to serious medical needs of prisoners." Id. Subsequent decisions by the Supreme Court and Eleventh Circuit have described the Eighth Amendment standard as including both "objective" and "subjective" components. See e.g. Chandler v. Crosby, 379 F. 3d 1278, 1289-90 (11th Cir. 2004).

**1.    Reed has failed to establish that PHS and/or Dr. Darbouze acted with "deliberate indifference" to any "serious medical need."**

The objective component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). The underlying conduct or condition must be "extreme" and pose "an unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F. 3d at 1289-90 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000, 117 L. Ed. 2d 156) (other citation omitted). In the context of a claim for delayed or refused medical treatment, a prisoner must establish the existence of "a serious medical need." Chandler, 379 F.3d at 1289-90; Farrow v. West, 320 F. 3d 1235, 1243 (11th Cir. 2003). The long-standing definition of a "serious medical need" in the Eleventh Circuit is as follows: a serious medical need is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention." <u>Farrow</u>, 320 F. 3d at 1243 (citing <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F. 3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)). Additionally, the serious medical need must be such that, if left untreated, "pos[es] a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811. The burden falls squarely upon Plaintiff to allege and ultimately establish the existence of a serious medical need. <u>See e.g.</u> <u>Hamm v. DeKalb County</u>, 774 F. 2d 1567 (11th Cir. 1985).

Reed's abdominal hernia clearly does not meet the aforementioned definition of a "serious medical need." First, Reed's hernia has been a chronic problem, having existed for almost twenty (20) years as a result of Reed suffering a gunshot wound to the abdomen; yet, the condition of the hernia remains stable and uncomplicated. (<u>See</u> <u>Dr. Darbouze Aff.</u> at ¶ 6; <u>Kay Wilson Aff.</u> at ¶ 7). Reed's hernia has further been described as "soft, mild tenderness [and] easily reducible." (<u>See</u> <u>Dr. Darbouze Aff.</u> at ¶ 4; <u>Kay Wilson Aff.</u> at ¶ 4). Second, Reed's hernia has been treated, and the choice of the physicians and medical staff treating Reed to forego referring Reed for surgery does not pose "an unreasonable risk of serious damage to Reed's future health." Those treating Reed have unmistakably stated that the hernia is not life-threatening and not getting any worse; thus, Dr. Darbouze's and other PHS employees medical judgment to forego surgical repair of the hernia does not in any way threaten Reed's future well-being, much less pose an "unreasonable risk of serious damage." (<u>See</u> <u>Dr. Darbouze Aff.</u> at ¶ 8; <u>Dr. Mosier Aff.</u> at ¶ 4; <u>Kay Wilson Aff.</u> at ¶ 7).

2.    **Reed has failed to establish that Dr. Darbouze and/or PHS "knowingly" disregarded an excessive risk to his health or safety.**

Even if Reed experienced a serious medical need during his incarceration at Easterling, he must also establish the "subjective" component of an Eighth Amendment violation. Plaintiff

must prove that Dr. Darbouze and PHS acted with "deliberate indifference." See e.g. Farmer, 511 U.S. at 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811. In Farmer, the Supreme Court wrote "deliberate indifference" exists when "the official knows of and disregards an excessive risk to inmate health or safety . . . ." Id.; see also Wilson v. Seller, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). The mere fact that a prison official should have known of or perceived a risk is of no consequence under the Eighth Amendment analysis. Farmer, 511 U.S. at 838, 114 S. Ct. 1970, 128 L. Ed. 2d 811. It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official. See e.g. Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Brown v. Hughes, 894 F. 2d 1533, 1537-38 (11th Cir. 1990). In sum, a prisoner's § 1983 claim for an alleged delay in medical treatment cannot survive summary judgment unless the inmate produces evidence "of the prison official's subjective awareness" of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." Id.; Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996)); Hill, 40 F.3d at 1186). Without evidence of this "specific intent," a prisoner's § 1983 claim cannot succeed. Steele, 87 F.3d at 1269.

Courts have also identified the specific type of alleged conduct which does *not* rise to the level of "deliberate indifference." In Crosby, the Eleventh Circuit held that *a prisoner's discomfort does not give rise to an Eighth Amendment violation*. 379 F.3d at 1295 (citations omitted) (emphasis added). Moreover, liability under the Eighth Amendment cannot exist for negligence in diagnosing or treatment an inmate's alleged medical condition. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. The Eighth Amendment does not prohibit or provide any remedy for any

"accidental inadequacy . . . or even medical malpractice[8] actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations and citation omitted).

In cases such as the present when a prisoner actually receives medical treatment, courts have altered their analysis of § 1983 medical claims. As to claims of delayed medical treatment, the Eleventh Circuit has instructed courts to be hesitant to find an Eighth Amendment violation when officials provide medical care to prison inmates. McElligott v. Foley, 182 F.3d. 1248, 1259 (11th Cir. 1999) (citing Waldrup v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). In fact, a prisoner alleging delayed medical treatment must show that the official acted with deliberate indifference, meaning the official knew of the serious medical condition and "intentionally or with reckless disregarded, delayed treatment." Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 1999). In Hill, the Eleventh Circuit added:

> Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a lay person because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, *delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation.* * * * Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the condition, and considering the reason for the delay.

40 F. 3d 1176, 1188-1189 (11th Cir. 1994) (emphasis added). Hence, whether a claim arises from delayed treatment depends upon "the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994).

Though no Eleventh Circuit case has specifically addressed the treatment or mistreatment of an inmate's hernia as it relates to the Eighth Amendment, other federal circuit courts have

---

[8]     As the Supreme Court concluded, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Estelle, 429 U.S. at 107, 97 S. Ct. 285, 50 L. Ed. 2d 251.

held that the decision whether or not to pursue a surgical remedy for a hernia is a matter of medical judgment. One such court held:

> A hernia can be a serious medical condition . . . however, [there can be no deliberate indifference where there is] no evidence that the particular defendants named in the . . . complaint knew that the delays they were contemplating in scheduling surgery created a substantial risk of medical harm. . . . *[W]hether or when a particular treatment is warranted is a 'classic example of a matter for medical judgment.'*

Heard v. Sheahan, No. 04-3162, 2005 U.S. App. LEXIS 18400, at *4-5 (7th Cir. August 24, 2005) (emphasis added);[9] Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992) ("The court [has] repeatedly held that a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment failed to rise to the level of a constitutional violation."). Still in another case involving the treatment of a hernia, Levy v. Kafka, the inmate wanted to have corrective surgery to repair his hernia; however, the physicians *ordered the use of a truss belt and ordered the inmate not to lift heavy weights* after concluding that surgical correction of the hernia was not medically necessary. 6 Fed. Appx. 822, 822-23 (10th Cir. 2001) (emphasis added).[10] The court stated that "[a] medical decision to forego one form of treatment in favor of a therapeutic device is not sufficient" to demonstrate "deliberate indifference to serious medical needs." Id. at 823; see also Horton v. Ward, 123 Fed. Appx. 368, 373 (10th Cir. 2005) ("the record reflects that plaintiff received extensive and regular medical care [with regard to his . . . hernia], and the undisputed facts reflect that plaintiff cannot show that such care evidenced deliberate indifference to his medical needs.") (internal quotations omitted);[11] Jackson v. McCollum, 118 Fed. Appx. 389, 391 (10th Cir. 2004) (stating that "[w]here medical treatment

---

[9]     A true and correct copy of this opinion is attached hereto as **Exhibit E**.

[10]    A true and correct copy of this opinion is attached hereto as **Exhibit F**.

[11]    A true and correct copy of this opinion is attached hereto as **Exhibit G**.

has been provided, and there has been no intentional delay or interference with an inmate's care, mere failure to provide additional care beyond what is medically required will neither constitute 'an unnecessary and wanton infliction of pain' nor be 'repugnant to the conscience of mankind.'").[12]  In essence, to give rise to the level of reprehensibility required to amount to subjective deliberate indifference, prison officials or physicians must have exemplified similar conduct to that of the following cases where they had actual knowledge that an inmate needed corrective surgery and still assigned the inmate to work detail, Johnson v. Clinton, 763 F.2d 326, 328 (8th Cir. 1985) or completely failed to examine an inmate when the physician suspected that a serious medical condition existed.  Smith v. Yarrow, 78 Fed. Appx. 529, 537 (6th Cir. 2003).[13]

Several Alabama district court opinions have also addressed the treatment of hernias by prison physicians and medical personnel.  In one such case, very similar to that of Reed, the inmate filed continued complaints and sick call requests with regard to the treatment of his hernia.  Miller v. Dr. Wilson, No. 95-0184, 1996 U.S. Dist. LEXIS 19584, *1-5 (S.D. Ala. Oct. 18, 1996).  The treating physician and medical staff were held not to have acted with deliberate indifference with regard to the treatment of the inmate's hernia because in response to his complaints, "the [inmate] received a *bottom bunk assignment, light work duty, Tylenol, and a [support device]*.  That [the inmate] has not received surgery or stronger pain medications amounts not to deliberate indifference but rather simply to a difference of opinion between [the inmate and the doctor] regarding appropriate medical treatment" and this does not rise to the level of a constitutional violation.  Miller, 1996 U.S. Dist. LEXIS 19584, at *10-11 (emphasis added).  In another opinion, the medical director at the prison determined that an elective surgery to remedy an inmate's hernia problems was not immediately necessary, although a physician and

---

[12]   A true and correct copy of this opinion is attached hereto as **Exhibit H**.

[13]   A true and correct copy of this opinion is attached hereto as **Exhibit I**.

the inmate were of the opinion that such an elective surgery may correct the inmate's problems. Watkins v. Mobile County Bd. of Comm'rs, No. 90-0908, 1994 U.S. Dist. LEXIS 6576, at *9-12 (S.D. Ala. Mar. 24, 1994). The court held that "a dispute over the different modes of medical treatment for [an inmate's] hernia . . . does not rise to the level of a constitutional claim." Watkins, 1994 U.S. Dist. LEXIS 6576, at *15; see also Reese v. Tillman, No. 99-0873, 1999 U.S. Dist. LEXIS 20443, at *5 (S.D. Ala. Nov. 30, 1999) (stating that where an inmate's hernia remains in a stable condition, "[i]n the absence of information indicating that there is a necessity to treat the hernia immediately, [the inmate] has failed to establish a serious medical need.").

Not only can Reed not show "conscience or callous indifference," as is required under § 1983 for claims asserted by inmates, but Reed cannot even show medical negligence. Dr. Darbouze and other PHS employees have never refused to provide care for Reed's hernia, much less have they intentionally or knowing withheld medical treatment. Rather, the physicians and medical personnel have provided various treatments to manage the condition of the hernia, including orders that Reed: refrain from heavy lifting, be given a bottom bunk assignment, not stand for prolonged periods, take the anti-acid medication Zantac, take Tylenol, take Motrin and wear a hernia binder. (See Dr. Darbouze Aff. at ¶ 7; Kay Wilson Aff. at ¶ 6; Linda Floyd Aff. at ¶ 4). This overwhelming evidence of timely and appropriate treatment demonstrates that Dr. Darbouze and other PHS employees have properly responded with various methods to manage Reed's condition at all times, past and present.

Furthermore, the mode of treatment to be used to care for a manageable, non-life threatening ailment is to be left to the medical judgment of physicians and other medical personnel, not the inmate. Each time Reed has sought surgical repair of his hernia, Dr. Darbouze and other PHS employees have determined that surgery is not medically necessary because the

hernia has not in the past, does not presently and likely will not in the future pose a serious threat to Reed's health; rather, it is a mere discomfort which can be treated by alternative remedies without the need for surgical repair at the present time. (See Dr. Darbouze Aff. ¶¶ 8-9; Dr. Mosier Aff. at ¶ 4; Kay Wilson Aff. at ¶ 8).

Finally, Reed's pain and discomfort stem largely from his constant refusal to heed Dr. Darbouze and other PHS employees' orders not to lift heavy objects (particularly lifting weights in the weight-yard at Easterling). (See Dr. Darbouze Aff. at ¶ 6; Kay Wilson Aff. at ¶¶ 7, 9-10; Linda Floyd Aff. at ¶ 5). With this type of reaction to the proscribed methods being used to treat his hernia, Reed will likely continue to have pain and discomfort that will not cease until he makes up his own mind to listen to those with advanced medical training regarding the treatment of his condition.

## IV.   **CONCLUSION**

Reed's allegations fall far short of meeting the Eighth Amendment requirements of establishing that his hernia is a "serious medical need" or that Dr. Darbouze and the PHS medical staff have acted with "callous indifference" to his condition. Dr. Darbouze and the PHS staff treating Reed have timely responded to each and every complaint made concerning Reed's hernia; and, based on their evaluations of Reed's then present condition have determined that, in their medical judgment, surgical repair of the hernia is not medically necessary. Based on the foregoing undisputed facts and legal analysis, Reed's petition for relief should be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EARNEST EDWARD REED, JR.<br>(AIS#111914), | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.<br>2:05-CV-770-T |
| | ) | |
| JEAN DARBOUZE, M.D., and PRISON<br>HEALTH SERVICES, | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

## ANSWER

COME NOW Defendants JEAN DARBOUZE, M.D. ("Dr. Darbouze") and PRISON

HEALTH SERVICES ("PHS," collectively with Dr. Darbouze, the "Defendants"), and for their

Answer to the Complaint filed by Plaintiff, state as follows:

FACTUAL ALLEGATIONS

I.      Previous Lawsuits

1.      Defendants deny all allegations set forth under Roman Numeral I and demand

strict proof thereof.

II.      Place of Present Confinement

2.      Defendants admit Plaintiff is currently confined in Easterling Correctional

Facility.  Defendants deny all remaining allegations set forth under Roman Numeral II and

demand strict proof thereof.

83206.4                                     15

III.     Names and Addresses of Individuals

3.     Defendants admit the address listed in the Plaintiff's Complaint is the true and correct address of PHS.  Defendants deny all remaining allegations set forth under Roman Numeral III and demand strict proof thereof.

IV.     Date Alleged Violation Occurred

4.     Defendants deny all allegations set forth under Roman Numeral IV and demand strict proof thereof.

V.     Grounds for Allegation

5.     Defendants admit that it is not medically necessary for Plaintiff to have surgery to repair the hernia.  Defendants deny all remaining allegations set forth under Roman Numeral V and demand strict proof thereof.

VI.     Prayer for Relief

6.     Defendants deny each and every prayer for relief set forth under Roman Numeral VI.  Likewise, Defendants state that Plaintiff is not entitled to any of the requested relief.  To the extent the Complaint makes any allegations of material fact, Defendants deny such allegations and demand strict proof thereof.

## AFFIRMATIVE OR OTHER DEFENSES

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred by the doctrine of contributory negligence and/or last clear chance.

### Third Defense

Plaintiff's claims are barred by the doctrine of assumption of risk.

83206.4

## Fourth Defense

Plaintiff's claims are barred by the doctrine of laches.

## Fifth Defense

Plaintiff's claims are barred by the statute of limitations.

## Sixth Defense

Plaintiff's claims are barred by the doctrine of waiver.

## Seventh Defense

The Court lacks subject matter jurisdiction over this dispute.

## Eighth Defense

This Court is the improper venue in which to assert this action.

## Ninth Defense

Plaintiff lacks standing to bring this action.

## Tenth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

## Eleventh Defense

Plaintiff's claims are barred by the doctrine of qualified immunity.

## Twelfth Defense

Plaintiff's claims are barred by the doctrine of sovereign immunity.

## Thirteenth Defense

Plaintiff's claims are barred by the doctrine of estoppel.

## Fourteenth Defense

Plaintiff's claims are barred by the doctrine of *res judicata* and/or collateral estoppel.

### Fifteenth Defense

Plaintiff's claims are barred, in whole or in part, because of his failure to mitigate damages.

### Sixteenth Defense

The Defendant avers that the wrongs and damages alleged by Plaintiff were caused solely by the acts and/or omissions of person and/or entities for whom or which Defendant is not responsible.

### Seventeenth Defense

Plaintiff's claims are barred because Defendant did not breach any duty Defendant allegedly owed to Plaintiff.

### Eighteenth Defense

Plaintiff's claims are barred because there is no casual relationship, legal or proximate, between Defendant's actions or failures to act and the Plaintiff's alleged injuries and damages.

### Nineteenth Defense

Plaintiff's claims are barred because of the existence of superseding, intervening causes.

### Twentieth Defense

Plaintiff's claims are barred because of the lack of damages suffered due to any of the alleged wrongs asserted against Defendant.

### Twenty-First Defense

Plaintiff has failed to exhaust or attempt to exhaust administrative remedies. 42 U.S.C. § 1997e(a) (2005).

### Twenty-Second Defense

Plaintiff's claims are barred because the action asserted is "frivolous, malicious, and fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1) (2005).

### Twenty-Third Defense

Plaintiff's claims are barred because no personal, physical injury has been alleged.  42 U.S.C. § 1997e(e) (2005).

### Twenty-Fourth Defense

Plaintiff's claims are barred because the injunctive relief sought is not sufficiently narrowly drawn.  18 U.S.C. § 3626(a)(1)(A) (2005).

### Twenty-Fifth Defense

Plaintiff's claims are barred because Defendants did not act with deliberate indifference. Estelle v. Gamble, 429 U.S. 97 (1976).

### Twenty-Sixth Defense

Plaintiff's claims are barred because of his failure to allege the existence of a serious medical condition.

### Twenty-Seventh Defense

Plaintiff's claims are barred because he is seeking to question a medical judgment via injunctive relief.

### Twenty-Eighth Defense

To the extent that Plaintiff's Complaint seeks monetary damages, a jury trial is requested to resolve those issues.

### Twenty-Ninth Defense

To the extent Plaintiff seeks to recover any attorneys' fees, Defendants object to any and all such requests for fees that are not asserted in the Complaint or otherwise approved by court order.

**Thirtieth Defense**

Plaintiff's claims for punitive damages violate PHS' United States and Alabama constitutional protections from, including without limitation, excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the law.

**Thirty-First Defense**

Defendants reserve the right to assert other defenses as discovery proceeds.

Respectfully submitted on this the 26th day of September 2005.

One of the Attorneys for Defendants,
Jean Darbouze, M.D. and Prison Health Services,
Inc.

**OF COUNSEL:**

David B. Block
William R. Lunsford
BALCH & BINGHAM LLP
Post Office Box 18668
Huntsville, AL 35804-8668
Telephone: (256) 551-0171
Facsimile: (256) 512-0119

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

the CM/ECF system, and I have mailed by United States Postal Service a copy of the foregoing

document to the following non-CM/ECF participants on this the 26th day of September, 2005:

Earnest Edward Reed, Jr. (AIS # 111914)
Easterling Correctional Facility
200 Wallace Drive
Clio, Alabama 36017-2615

_____
Of Counsel