# Exhibit "G"

Horton v. Ward

5 of 184 DOCUMENTS

**HAROLD HORTON, Plaintiff-Appellant, v. RON WARD, individually and in his official capacity as Director Oklahoma Department of Corrections; JO ANN RYAN, individually and in her official capacity as Chief Medical Officer of DOC; MIKE JACKSON, individually and in his official capacity as Regional Medical Authority and Facility Physician; PAUL JOHNSON, individually and in his official capacity as Primary Care Physician DCCC; BRADLEY PAYAS, individually and in his official capacity as Health Care Administrator DCCC; DENNIS COTNER, individually and in his official capacity as Medical Administrator ODOC, Defendants-Appellees.**

No. 03-6306

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

*123 Fed. Appx. 368; 2005 U.S. App. LEXIS 3146*

**February 23, 2005, Filed**

**NOTICE:** [**1] RULES OF THE TENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** (W.D. Okla.). (D.C. No. 02-CV-1042-T).

**DISPOSITION:** Affirmed. Plaintiff's motion to proceed without prepayment of appellate filing fee granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** HAROLD HORTON, Plaintiff - Appellant, Pro se, Conner Correctional Center, Hominy, OK.

For RON WARD, individually and in his official capacity as Director Oklahoma Department, JO ANN RYAN, individually and in her official capacity as Chief Medical Officer of DOC, MIKE JACKSON, individually and in his official capacity as Regional Medical Authority and Facility Physician, PAUL JOHNSON, individually and in his official capacity as Primary Care Physician DCCC, BRADLEY PAYAS, individually and in his official capacity as Health Care Administrator DCCC, DENNIS COTNER, individually and in his official capacity as Medical Administrator ODOC, Defendants - Appellees: Ronald A. Anderson, Oklahoma Department of Corrections, Oklahoma City, OK.

**JUDGES:** Before TACHA, Chief Judge, HENRY, and O'BRIEN, Circuit Judges.

**OPINIONBY:** Deanell Reece Tacha

**OPINION:**

[*369] **ORDER AND JUDGMENT** *

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of *10th Cir. R. 36.3*.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See *Fed. R. App. P. 34(a)(2)*; *10th Cir. R. 34.1(G)*. The case is therefore ordered submitted without oral argument.

In this [**2] *42 U.S.C. § 1983* action, the district court entered an order dismissing the claims that plaintiff-appellant Harold Horton, a state prisoner appearing pro se, asserted against defendants-appellees Ron Ward, Bradley Payas, and Dennis Cotner for failure to state a claim under *Fed. R. Civ. P. 12(b)(6)*. In the same order, the court granted summary judgment under *Fed. R. Civ. P. 56* in favor of defendants-appellees Jo Ann Ryan, Paul Johnson, and Michael Jackson. Plaintiff is now appealing the district court's order. Our jurisdiction arises under *28 U.S.C. § 1291*. We affirm.

## I.

Plaintiff is incarcerated at the Dick Conner Correctional Center (DCCC) in Hominy, Oklahoma. Defendant Ward is the [*370] Director of the Oklahoma Department of Corrections (ODOC). Defendant Payas is the Health Administrator at DCCC. Defendant Cotner is the Medical Services Administrator for the ODOC. Defendants Ryan, Johnson, and Jackson are physicians employed by the ODOC, and they have each provided medical care to plaintiff at DCCC.

In his complaint, plaintiff alleged that defendants [**3] violated his *Eighth Amendment* right to be free from cruel and unusual punishment because they were deliberately indifferent to his serious medical needs. Specifically, as summarized by the district court, plaintiff alleged "that defendants were deliberately indifferent to his serious medical needs because: (1) they delayed, refused, and denied him adequate medical care for an umbilical hernia; (2) they delayed and denied treatment for liver disease in the form of a liver transplant; and (3) they interfered with medical treatment after it was prescribed by one physician." R., Doc. 39 at 1-2.

Defendants filed a motion to dismiss or, in the alternative, for summary judgment, and the district court disposed of all of plaintiff's claims in response to defendants' motion. First, because plaintiff failed to allege that they personally participated in any of the decisions regarding his medical care, the court determined that plaintiff had failed to state a claim against defendants Ward, Payas, and Cotner. As a result, the court dismissed plaintiff's claims against those defendants under *Rule 12(b)(6)*.

Second, although the court determined that defendants Ryan, Jackson, and Johnson were not [**4] entitled to have the claims that plaintiff asserted against them dismissed under *Rule 12(b)(6)* based on their defense of qualified immunity, the court concluded that they were entitled to summary judgment under *Rule 56*. In the case of defendant Ryan, the court found that plaintiff's claims were barred by the applicable two-year statute of limitations because "construing all facts in the record most favorably to plaintiff, the last possible date on which [Dr.] Ryan could have treated him was May 15, 2000, more than two years before the lawsuit was filed." *Id.* at 5. In the case of defendants Jackson and Johnson, the court found that they both "were involved in the medical treatment of plaintiff's umbilical hernia and his liver disease." *Id.* at 6. The court concluded, however, that plaintiff had failed to put forth sufficient evidence to establish that defendants Jackson and Johnson had acted with deliberate indifference with regard to their treatment of his umbilical hernia and liver disease. Consequently, the court concluded "that the evidence [was] not sufficient to create a material fact dispute from which a reasonable jury could conclude that plaintiff's *Eighth Amendment* [**5] rights have been violated." *Id.* at 9.

## II.

We review the district court's grant of defendants' motion to dismiss under *Rule 12(b)(6)* de novo, applying the same standards as the district court. *See Montgomery v. City of Ardmore, 365 F.3d 926, 935 (10th Cir. 2004).* Like the district court, we must therefore assume that all of the well-pleaded factual allegations in plaintiff's complaint are true, and we view them in the light most favorable to plaintiff. *Id.* In addition, a *Rule 12(b)(6)* motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted). Because he is pro se, we must also construe plaintiff's pleadings liberally. *See Haines v. Kerner, 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972).*

[*371] Similarly, "we review the grant of summary judgment de novo applying the same standard as the district court embodied in *Rule 56(c).*" *Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).* Under *Rule 56(c)*, summary judgment is proper if "there is no genuine issue as to any material fact and [**6] . . . the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* "In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler, 144 F.3d at 670.* However, "conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003)* (quotation omitted).

Having conducted the required de novo review, we conclude that plaintiff has failed to demonstrate that the district court committed reversible error under *Rule 12(b)(6)* or *Rule 56(c)*. To begin with, as found by the district court, plaintiff has failed to allege that defendants Ward, Payas, or Cotner personally authorized, supervised or participated in the decisions regarding his medical care. This omission is fatal to plaintiff's claims against those defendants. *See Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990)* (holding that, to establish supervisory liability in a *§ 1983* action, a plaintiff must show that "a supervisory [**7] defendant, expressly or otherwise, authorized, supervised, or participated in conduct which caused the constitutional deprivation"). Thus, the district court did not err in finding that plaintiff had failed to state a claim against defendants Ward, Payas, and Cotner.

We also agree with the district court that defendants Ryan, Jackson, and Johnson were entitled to summary

judgment. Starting with defendant Ryan, plaintiff has failed to point to any facts which show that his claims against defendant Ryan are not time-barred, and we are not persuaded by the continuing-violation and equitable tolling arguments that plaintiff has advanced in his opening brief. *See* Aplt. Opening Br. at 19-19C. Thus, we must affirm the entry of summary judgment in favor of defendant Ryan.

With respect to defendants Jackson and Johnson, we conclude that plaintiff has failed to put forth sufficient evidence to establish that either of these defendants acted with deliberate indifference to his serious medical needs. As this court has recognized,

> A prison official's deliberate indifference to an inmate's serious medical needs violates the *Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102, 50 L. Ed. 2d 251, 97 S. Ct. 285,* [**8] . . . *(1976).* "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970* . . . *(1994).* A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)* (quoting *Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)* (further quotation omitted)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer, 511 U.S. at 837.*

*Sealock v. State of Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).* Given these standards, it is not enough for a prisoner to establish that a prison doctor failed to [*372] diagnose or treat a serious medical condition properly, and this is true even if the doctor acted negligently. *Id. at 1211.* Further, while this court has recognized [**9] that a delay in providing medical care may constitute deliberate indifference, a "delay in medical care only constitutes an *Eighth Amendment* violation where the plaintiff can show that the delay resulted in substantial harm." *Id. at 1210.*

In this case, there is no question that plaintiff's liver problems constituted a serious medical condition. On the other hand, it is also undisputed that the prison doctors and medical staff at DCCC have provided plaintiff with extensive medical care and treatment with regard to his liver problems, n1 including a number of consultations with outside medical professionals. In addition, plaintiff has failed to point to any specific facts which support his claim that defendants Jackson and Johnson have acted with deliberate indifference with regard to his liver problems.

> n1 In fact, the record shows that plaintiff was housed in the infirmary at DCCC from February 25, 2000 until November 30, 2001. *See* R., Doc. 27 at 10. This was done so that the prison medical staff could "more closely monitor his liver condition." *Id.*

[**10]

Most importantly, although plaintiff claims that defendants Jackson and Johnson have violated the *Eighth Amendment* by failing to make arrangements for him to undergo a liver transplant operation and receive a portion of his identical twin brother's liver, n2 the record shows that defendant Johnson and the surgical team at Oklahoma University Medical Center did consider whether plaintiff was a candidate for a liver transplant. *See* R., Doc. 27, Ex. N at 2. They concluded, however, that such a procedure was too risky for plaintiff to undergo "due to the risk of peritonitus or inflammation and/or infection of the abdominal cavity." *Id.* Defendant Jackson has also opined that plaintiff is not a candidate for a liver transplant because "he has an extensive history of poor adherence to medical regimens." *Id.,* Doc. 26, Ex. 1 at 2. We conclude that plaintiff has failed to show that the decision to forego a transplant operation was deliberately indifferent to his medical needs. At best, plaintiff has only established a difference of opinion regarding the feasibility of a transplant, and that is insufficient to support an *Eighth Amendment* violation. *See Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993).* [**11]

> n2 Plaintiff alleges that his identical twin brother is willing to donate a portion of his liver to him, and we will assume that this allegation is true for purposes of this appeal.

Although it is a closer question, we also conclude that plaintiff has failed to put forth sufficient evidence to establish deliberate indifference with regard to the treatment he received for his umbilical hernia. Plaintiff's umbilical hernia was first diagnosed in December 1999, when defendant Jackson noted a "2cm umbilical hernia,

easily reducible." R., Doc. 27, Att. J at 48. Plaintiff's medical records indicate that he was subsequently referred to Griffin Memorial Hospital and Oklahoma University Medical Center for a number of outside consultations to determine whether the umbilical hernia could be surgically repaired. *Id.*, Att. K at 36-37, 41-43, 49-51. Because of concerns arising from plaintiff's liver problems, the consulting physicians were initially reluctant to recommend surgery. *Id.*, Att. J at 66. However, plaintiff's [**12] medical records indicate that his umbilical hernia was increasing in size in 2001, *id.* at 68, and plaintiff was apparently placed on a waiting list for surgery in June 2001, *id.* at 69. As a result, we have no trouble concluding that plaintiff's umbilical hernia was a serious medical condition.

[*373] Nonetheless, like the district court, we conclude that plaintiff does not have sufficient evidence to establish that defendants Jackson and Johnson acted with deliberate indifference with regard to his umbilical hernia. To begin with, the record shows that plaintiff cut his umbilical hernia in November 2001 during a self-mutilation episode that occurred in the infirmary at DCCC, *id.* at 71-72, and the resulting self-inflicted wound exacerbated the problems associated with the hernia and created a high risk of infection, *id.*, Att. N at 1. The record also shows that plaintiff was scheduled to have his umbilical hernia surgically repaired in August 2002, but, due to an error by the prison nursing staff, plaintiff missed his appointment for the surgery. *Id.*, Att. J at 78-83; Att. N at 1; Att. O at 2; R., Doc. 26, Ex. 2 at 1. There is no evidence in the record indicating that either [**13] Dr. Jackson or Dr. Johnson were involved in the failure to transport plaintiff to his surgery appointment, however. Further, the record shows that the prison medical staff subsequently reevaluated the potential risks and benefits that were associated with a surgical repair of plaintiff's umbilical hernia. *Id.*, Att. J at 87-89, 91. Towards that end, Dr. Jackson and Dr. Johnson eventually determined that plaintiff was not a good candidate for surgery due to the high risk of infection caused by his prior self-inflicted injury and his liver problems. *Id.*, Att. N at 1; R., Doc. 26, Ex. 1 at 3. Accordingly, while plaintiff may personally disagree with the decision not to reschedule the surgery, "the record reflects that plaintiff received extensive and regular medical care [with regard to his umbilical hernia], and the undisputed facts reflect that plaintiff cannot show that such care evidenced deliberate indifference to his medical needs." n3 R., Doc. 39 at 8.

n3 Plaintiff remains incarcerated at DCCC, and, in his opening brief, plaintiff asserts that he finally underwent surgery to repair his umbilical hernia in 2004. According to plaintiff, the surgery was performed without any complications, and plaintiff believes that the success of the surgery demonstrates that there were no legitimate reasons to delay the surgery. *See* Aplt. Opening Br. at 18E-*18 F. 19B*. Plaintiff also alleges that he was told by the doctor who performed the surgery that "[the doctor] was amazed that the hernia operation had not been performed when first diagnosed." *Id.* at 18F. Plaintiff's surgery occurred after the conclusion of the district court proceedings in this case, however, and we do not consider materials or arguments that were not presented to the district court. *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1319 (10th Cir. 1998).

[**14]
The judgment of the district court is AFFIRMED. Plaintiff's motion to proceed without prepayment of the appellate filing fee is granted, and we remind plaintiff that he must continue making partial payments on court fees and costs previously assessed until such have been paid in full.

Entered for the Court

Deanell Reece Tacha

Chief Judge