IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EARNEST EDWARD REED, JR. (AIS# 111914), <br><br> Plaintiff, <br><br> v. <br><br> JEAN DARBOUZE, M.D. and PRISON HEALTH SERVICES, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 2:05-CV-770-T |

**DEFENDANTS' SUPPLEMENTAL SPECIAL REPORT AND ANSWER**

COME NOW Defendants JEAN DARBOUZE, M.D. ("Dr. Darbouze") and PRISON HEALTH SERVICES, INC. ("PHS," collectively with Dr. Darbouze, the "Defendants") and, pursuant to this Court's August 16, 2005, Order for Special Report and Answer and this Court's October 26, 2005, Order for Supplemental Special Report and Answer, submit the following Special Report addressing the allegations asserted by Plaintiff EARNEST EDWARD REED, JR. ("Plaintiff"):

I.  **INITIAL DISCLOSURES**

Defendants make the following initial disclosures[1] as required by paragraph 2 of this Court's August 16, 2005, Order for Special Report and this Court's October 26, 2005, Order for Supplemental Special Report:

   A.   The sworn statement of Dr. Jean Darbouze dated September 26, 2005;[2]

---

[1] This initial disclosures section refers to this Court's requirement to obtain the "sworn statements of all persons having knowledge of the subject matter of the complaint" as required by this Court's August 16, 2005, Order for Special Report and Answer. Order at ¶ 2. The sworn statements attached hereto include any and all present employees of PHS who have knowledge pertinent and/or material to Plaintiff's allegations in this case.

85661.1

    B.    The sworn statement of Linda Floyd, Certified Registered Nurse Practitioner ("CRNP"), dated September 22, 2005;[3]

    C.    The sworn statement of Kay Wilson, Health Services Administrator ("HSA") at Easterling Correctional Facility ("Easterling"), dated September 26, 2005;[4]

    D.    The sworn statement of Dr. Willard W. Mosier dated September 26, 2005;[5]

    E.    The sworn statement of Dr. Jean Darbouze dated November 9, 2005;[6] and

    F.    The sworn statement of Beth H. Long dated October 31, 2005.[7]

## II. SUPPLEMENTAL NARRATIVE STATEMENT OF UNDISPUTED FACTS

The following Supplemental Narrative Statement of Undisputed Facts is provided in response to this Court's October 26, 2005, Order for Supplemental Special Report and Answer, directing Defendants to:

> file a supplemental written report addressing Plaintiff's allegation that his prescription for Tylenol has run out, that he requested that this pain medication be re-ordered and continued, and that as of the signature date of his response, no action in this regard has been taken.

Defendants' Narrative Statement of Undisputed Facts is incorporated herein by this reference in its entirety, as if set forth fully herein.

---

[2] A true and correct copy of Dr. Jean Darbouze's affidavit dated September 26, 2005 was submitted together with Defendants' Special Report and Answer on September 26, 2005, as **Exhibit A**.

[3] A true and correct copy of Linda Floyd's affidavit dated September 22, 2005 was submitted together with Defendants' Special Report and Answer on September 26, 2005, as **Exhibit B**.

[4] A true and correct copy of Kay Wilson's affidavit dated September 26, 2005 was submitted together with Defendants' Special Report and Answer on September 26, 2005, as **Exhibit C**.

[5] A true and correct copy of Dr. Willard W. Mosier's affidavit dated September 26, 2005 was submitted together with Defendants' Special Report and Answer on September 26, 2005, as **Exhibit D**.

[6] A true and correct copy of Dr. Jean Darbouze's affidavit dated November 9, 2005 ("Darbouze Affidavit"), is attached hereto as **Exhibit E**.

[7] A true and correct copy of Beth H. Long's affidavit dated October 31, 2005 ("Long Affidavit"), is attached hereto as **Exhibit F**.

Plaintiff Earnest Edward Reed, Jr. has been incarcerated at Easterling since December of 2003. (Darbouze Affidavit at ¶ 3). Dr. Jean Darbouze is employed by Prison Health Services, Inc. as the Medical Director for Easterling Correctional Facility ("Easterling") in Clio, Alabama. (Id. at ¶ 2). Dr. Darbouze is a board certified internal medicine physician. (Id. at ¶ 2).

When an inmate has a non-emergency medical or health problem and/or complaint, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff at Easterling and/or request medical treatment for this problem. (Id. at ¶ 4). The sick call request process is well-known at Easterling and is utilized by inmates at Easterling on a daily basis. (Id.). When an inmate first arrives at Easterling, he is taken to the Health Care Unit to be processed into the system and receives an orientation as to the availability of medical services at the facility as well as the procedures for obtaining medical care. (Id.). During this orientation, the medical staff gives each inmate an information sheet and verbally goes through the sheet with newly-arriving inmates, informing them how to utilize the sick call request form process. (Id.). Sick call request forms are available in the Health Care Unit at the shift commander's station or may be obtained from the Alabama Department of Corrections ("ADOC") officer in each dorm at Easterling. (Id.). An inmate making a sick call request is required to complete the top portion of the sick call request form (stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature) and submit the sick call request form by placing it in a locked box located outside the facility's kitchen (i.e., chow hall). (Id.). The sick call request forms are removed from the locked box each day and brought to the Health Care Unit. (Id.). Upon retrieving the sick call request forms, the medical staff compiles a list of inmates having submitted a sick call request form, which is sent to the various dorms at Easterling. (Id.). Easterling conducts sick call five (5) times

85661.1                                    3

per week, Sunday through Friday excluding holidays or unexpected emergencies. (Id.). Sick call begins at 7:00 p.m. and lasts as long as required to examine all the inmates who report to sick call. Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints at the time they are summoned to the Health Care Unit for sick call. (Id.). The number of inmates reporting to sick call each day varies between approximately ten (10) and thirty-five (35). (Id.). The nurse conducting sick call takes reporting inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Easterling. (Id.). If the inmate fails to report to sick call when summoned, this is often indicated in the sick call request form because it is left blank by the medical staff. (Id.). If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-threatening, the medical staff will immediately have the inmate brought to the infirmary (located within the Health Care Unit) and the inmate will be examined and treated by a physician. (Id.).

On June 27, 2005, Plaintiff submitted a sick call request form, complaining about pain associated with his abdominal hernia. (Darbouze Affidavit at ¶ 5; Long Affidavit and medical records attached thereto). The medical staff at Easterling received this sick call request form on June 28, 2005. (Id.). Plaintiff was examined and evaluated during sick call by a member of the medical staff at Easterling. (Id.). At the conclusion of Plaintiff's examination and evaluation during sick call, the medical staff member conducting sick call referred Plaintiff to see a physician and also directed Plaintiff to take 500 milligrams of Tylenol twice a day for a period of five (5) days. (Id.).

When medication is ordered and administered to inmates at Easterling, the medical staff utilizes a document entitled "MEDICATION ADMINISTRATION RECORD" (commonly referred to as "MARs") to record the name and dosages of the medication, the expiration date of the order and the administration of the medication to the inmate. (Id. at ¶ 6). As indicated in the MARs contained in Plaintiff's medical records, Plaintiff received Tylenol[8] at 4 a.m. and 4 p.m. on June 27, 28 and 29, 2005, as well as July 1 and 2, 2005, as ordered during the June 28, 2005, sick call. (Id.). On each of these dates, a member of the medical staff at Easterling who was conducting pill call signed Plaintiff's MARs, acknowledging that Reed had received and taken the Tylenol. (Id.). Plaintiff did not continue taking Tylenol after July 2, 2005, because he did not have any current order for Tylenol after that date. (Id.).

On or about July 7, 2005, Dr. Darbouze saw Plaintiff for evaluation of his complaints regarding his abdominal hernia. (Darbouze Affidavit at ¶ 7). During Dr. Darbouze's examination of Plaintiff, Plaintiff mentioned he was experiencing some discomfort related to this abdominal hernia. In order to alleviate this discomfort, Dr. Darbouze ordered Plaintiff to take two (2) tablets of Percogesic three (3) times a day for a period of fourteen (14) days. (Id.). Percogesic contains acetaminophen which reduces fever and provides temporary relief of such minor aches and pains as headaches, muscular aches, backaches, toothaches, menstrual discomfort and arthritis. (Id.). In short, Percogesic contains the same ingredients found in medication Tylenol PM. (Id.). Based upon Dr. Darbouze's medical judgment, he believed it was in Plaintiff's best interest to receive Percogesic to relieve his discomfort. (Id.). During this examination, Plaintiff did not request any other pain medication or request that Dr. Darbouze provide him with an order for Tylenol. (Id.). As indicated in Plaintiff's MARs, he began taking

---

[8] Because of the large number of inmates at Easterling who receive Tylenol on a regular basis, the medical staff at Easterling maintains a significant supply of Tylenol in the on-site pharmacy at Easterling. (Darbouze Affidavit at ¶ 8). During June and July, 2005, the medical staff at Easterling did not "run out" of Tylenol. (Id.).

Percogesic at 4:00 p.m. on July 7, 2005. (Darbouze Affidavit at ¶ 7; Long Affidavit and medical records attached thereto). Between July 7, 2005, and July 21, 2005, Plaintiff received his Percogesic as prescribed at 4:00 a.m., 9:00 a.m. and 4:00 p.m. pill call. (Id.).

From June 27, 2005 to October 14, 2005, Plaintiff did not submit any sick call request form requesting any additional pain medication and/or an order for Tylenol. (Darbouze Affidavit at ¶ 9). Between October 14, 2005, and January 22, 2004, Plaintiff submitted a total of fifteen (15) sick call request forms, requesting medical treatment for various medical conditions. (Id.). Plaintiff has not at any time (prior to or subsequent to the filing of his lawsuit) filed any sick call request form requesting pain medication and/or a renewal of his order for Tylenol. (Id.).

On or about October 14, 2005 and October 16, 2005, Plaintiff submitted his first sick call request forms in over three (3) months, complaining of discomfort associated with his abdominal hernia. (Darbouze Affidavit at ¶ 10). During the previous three (3) months, Plaintiff did not notify Dr. Darbouze or the medical staff of any symptoms or discomfort associated with or arising from his abdominal hernia. (Id.). At the time Dr. Darbouze evaluated Reed on or about October 17, 2005, Dr. Darbouze ordered Plaintiff to take 400 mg of Advil to alleviate any discomfort related to his abdominal hernia. (Id.). Additionally, Dr. Darbouze ordered Plaintiff to take Percogesic twice a day for thirty (30) days. (Id.). Since October 17, 2005, Dr. Darbouze has received this medication, as prescribed. (Id.; Long Affidavit and medical records attached thereto). If Plaintiff's abdominal discomfort should not be alleviated by this medication and/or his discomfort continues beyond the thirty (30) day prescription of Percogesic, Plaintiff may file a sick call request at any time requesting that the medical staff at Easterling re-evaluate his condition and/or provide additional medication. (Darbouze Affidavit at ¶ 10). As of the date of

this Special Report, Plaintiff has not submitted any sick call request form or any other request of any kind since October 16, 2004, requesting additional and/or different medication. (Id.).

Plaintiff has not submitted any grievance regarding any request for Tylenol and/or other pain medication and/or his claim that he was denied Tylenol. (Darbouze Affidavit at ¶ 11; Long Affidavit and medical records attached thereto).

### III. SUPPLEMENTAL DISCUSSION

While it is unclear if Plaintiff is claiming the medical staff at Easterling has refused him Tylenol, failed to fulfill his Tylenol prescription or simply delayed in providing him with Tylenol, the undisputed facts as presented by Dr. Darbouze and PHS are clear and unmistakable. As demonstrated by the evidence submitted by Dr. Darbouze and PHS, the following facts are undisputed:

(1) Plaintiff made certain complaints to the medical staff at Easterling about his abdominal hernia (Darbouze Affidavit at ¶¶ 5, 10; Long Affidavit and medical records attached thereto);

(2) Plaintiff was evaluated by nurses at Easterling as well as Dr. Darbouze regarding these complaints in a timely manner (Darbouze Affidavit at ¶¶ 5, 6 and 10; Long Affidavit and medical records attached thereto);

(3) Dr. Darbouze provided Plaintiff with orders for certain pain medications, including both Tylenol and Percogesic (Darbouze Affidavit at ¶¶ 6, 7 and 10; Long Affidavit and medical records attached thereto);

(4) Plaintiff took these medications as ordered by Dr. Darbouze (Id.);

(5) Plaintiff is currently taking pain medications for any discomfort associated with his abdominal hernia (Darbouze Affidavit at ¶ 10; Long Affidavit and medical records attached thereto); and

(6) Plaintiff has not filed any grievance requesting Tylenol or complaining that he has not or is not receiving Tylenol or other pain medication as prescribed. (Darbouze Affidavit at ¶ 11; Long Affidavit and medical records attached thereto).

85661.1                                 7

Based upon these undisputed facts alone, Plaintiff cannot demonstrate that Dr. Darbouze and/or PHS failed to provide him with necessary medical treatment for any serious medical condition or that they otherwise violated his Eighth Amendment rights in any way.

### A. Plaintiff cannot state and/or establish a claim against Dr. Darbouze and/or PHS for any Eighth Amendment violation.

The Eighth Amendment[9] to the United States Constitution governs the conditions of confinement for prisoners and the treatment of these prisoners during the term of their incarceration. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)); see also Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986); Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) (writing that the standard of "cruel and unusual punishments" applies to prison conditions). An alleged Eighth Amendment violation may be actionable under 42 U.S.C. § 1983.[10] Courts have devoted an extraordinary amount of time clearly defining the requirements for asserting and succeeding upon a claim for an Eighth Amendment violation under § 1983.

In its well-known opinion in Estelle v. Gamble, the United States Supreme Court instructed that an Eighth Amendment claim only exists when a prison official engages in the

---

[9] Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . ." See Hamm v. DeKalb County, 774 F.2d 1567, 1573-74 (11th Cir. 1985). To the extent Defendants rely upon any cases addressing the application of the Fourteenth Amendment in the prison context, such cases are equally applicable in this case.

[10] 42 U.S.C. § 1983 provides, in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

"unnecessary and wanton infliction of pain." 429 U.S. 97, 105 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The Estelle Court interpreted this phrase to mean prison officials must not act with "deliberate indifference to serious medical needs of prisoners." Id. Subsequent decisions by the Supreme Court and Eleventh Circuit have described the Eighth Amendment standard as including both "objective" and "subjective" components. See e.g. Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004).

The objective component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). The underlying conduct or condition must be "extreme" and pose "an unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F.3d at 1289-90 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000, 117 L. Ed. 2d 156) (other citation omitted). In the context of a claim for delayed or refused medical treatment, a prisoner must establish the existence of "a serious medical need." Chandler, 379 F.3d at 1289-90; Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The long-standing definition of a "serious medical need" in the Eleventh Circuit is as follows: a serious medical need is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, 320 F. 3d at 1243 (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)). Additionally, the serious medical need must be such that, if left untreated, "pos[es] a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811. The burden falls squarely upon Plaintiff to allege and ultimately establish the existence of a serious medical need. See e.g. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

As discussed at length in Defendants' Special Report, Plaintiff's abdominal hernia clearly does not meet the aforementioned definition of a "serious medical need." Defendants will not repeat this argument here. Regardless of whether or not Plaintiff's abdominal hernia constituted a "serious medical need," he has received various types of treatments and medication for this condition.

In addition to this objective component, i.e. a serious medical need, Plaintiff must also establish the "subjective" component of an Eighth Amendment violation. Plaintiff must prove that Dr. Darbouze and PHS acted with "deliberate indifference." See e.g. Farmer, 511 U.S. at 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811. In Farmer, the Supreme Court wrote "deliberate indifference" exists when "the official knows of and disregards an excessive risk to inmate health or safety . . . ." Id.; see also Wilson v. Seller, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). The mere fact that a prison official should have known of or perceived a risk is of no consequence under the Eighth Amendment analysis. Farmer, 511 U.S. at 838, 114 S. Ct. 1970, 128 L. Ed. 2d 811. It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official. See e.g. Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990). In sum, a prisoner's § 1983 claim for an alleged delay in medical treatment cannot survive summary judgment unless the inmate produces evidence "of the prison official's subjective awareness" of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care." Id.; Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87 F.3d 1266, 1269 (11th Cir. 1996)); Hill, 40 F.3d at 1186). Without evidence of this "specific intent," a prisoner's § 1983 claim cannot succeed. Steele, 87 F.3d at 1269.

Courts have also identified the specific type of alleged conduct which does *not* rise to the level of "deliberate indifference." In Crosby, the Eleventh Circuit held that *a prisoner's discomfort does not give rise to an Eighth Amendment violation.* 379 F.3d at 1295 (citations omitted) (emphasis added). Moreover, liability under the Eighth Amendment cannot exist for negligence in diagnosing or treatment an inmate's alleged medical condition. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. The Eighth Amendment does not prohibit or provide any remedy for any "accidental inadequacy . . . or even medical malpractice[11] actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations and citation omitted).

In cases such as the present when a prisoner actually receives medical treatment, courts have altered their analysis of § 1983 medical claims. As to claims of delayed medical treatment, the Eleventh Circuit has instructed courts to be hesitant to find an Eighth Amendment violation when officials provide medical care to prison inmates. McElligott v. Foley, 182 F.3d. 1248, 1259 (11th Cir. 1999) (citing Waldrup v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). In fact, a prisoner alleging delayed medical treatment must show that the official acted with deliberate indifference, meaning the official knew of the serious medical condition and "intentionally or with reckless disregarded, delayed treatment." Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 1999). In Hill, the Eleventh Circuit added:

> Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a lay person because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, *delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation.* * * * Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need,

---

[11] As the Supreme Court concluded, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Estelle, 429 U.S. at 107, 97 S. Ct. 285, 50 L. Ed. 2d 251.

> deciding whether the delay worsened the condition, and considering the reason for the delay.

40 F.3d 1176, 1188-89 (11th Cir. 1994) (emphasis added). Hence, whether a claim arises from delayed treatment depends upon "the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994).

There is simply no evidence that Dr. Darbouze and/or PHS failed and/or refused in any way to provide Plaintiff with any pain medication. To the contrary, Plaintiff has been prescribed and received pain medications whenever he made complaints regarding any discomfort related to his abdominal hernia. (Darbouze Affidavit at ¶¶ 5-10; Long Affidavit and medical records attached thereto). There is no evidence that (1) Plaintiff was ever denied pain medication; (2) Plaintiff's complaints of pain or discomfort were ignored by the medical staff at Easterling; (3) Plaintiff did not receive pain medication prescribed by Dr. Darbouze; or (4) the medical staff at Easterling ever ran out of Plaintiff's pain medication. Indeed, Plaintiff is currently taking pain medication prescribed for any discomfort related to his abdominal hernia. (Id.). For these reasons, Plaintiff simply cannot state a claim for deliberate indifference or produce any evidence to substantiate this claim in any way. Accordingly, Plaintiff's Complaint is due to be dismissed.

> **B.  Plaintiff failed to exhaust his administrative remedies prior to filing a claim regarding his alleged need for Tylenol.**

Plaintiff has not filed any grievance requesting Tylenol or complaining that he has not or is not receiving Tylenol or other pain medication as prescribed. (Darbouze Affidavit at ¶ 11; Long Affidavit and medical records attached thereto). The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such ***administrative remedies as are available are exhausted.***" 42 U.S.C. § 1997e(a) (emphasis added).

Therefore, in the absence of any grievance filed by Plaintiff regarding his Tylenol prescription, Plaintiff's claims are barred by the PLRA.

### III. Plaintiff fails to identify any physical injury he allegedly experienced as a result of not allegedly receiving Tylenol.

Though Plaintiff has in fact received pain medication as prescribed by the medical staff at Easterling, he cannot proceed with his claim because he fails to identify any physical injury he allegedly suffered as a result of not allegedly receiving Tylenol. The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of *physical injury*." 42 U.S.C. § 1997e(e) (emphasis added). Therefore, in the absence of any physical injury, Plaintiff's claims are barred by the PLRA.

### IV. CONCLUSION

Based on the foregoing undisputed facts and legal analysis, Plaintiff's Complaint is due to be dismissed in its entirety.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EARNEST EDWARD REED, JR. (AIS#111914), | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:05-CV-770-T |
| JEAN DARBOUZE, M.D., and PRISON HEALTH SERVICES, | ) ) ) ) | |
| Defendants. | ) ) | |

**SUPPLEMENTAL ANSWER**

COME NOW Defendants JEAN DARBOUZE, M.D. ("Dr. Darbouze") and PRISON HEALTH SERVICES ("PHS," collectively with Dr. Darbouze, the "Defendants"), and for their Supplemental Answer to the Complaint filed by Plaintiff, state as follows:

FACTUAL ALLEGATIONS

I.   Previous Lawsuits

1. Defendants deny all allegations set forth under Roman Numeral I and demand strict proof thereof.

II.   Place of Present Confinement

2. Defendants admit Plaintiff is currently confined in Easterling Correctional Facility. Defendants deny all remaining allegations set forth under Roman Numeral II and demand strict proof thereof.

III.   Names and Addresses of Individuals

3.   Defendants admit the address listed in the Plaintiff's Complaint is the true and correct address of PHS. Defendants deny all remaining allegations set forth under Roman Numeral III and demand strict proof thereof.

IV.   Date Alleged Violation Occurred

4.   Defendants deny all allegations set forth under Roman Numeral IV and demand strict proof thereof.

V.   Grounds for Allegation

5.   Defendants admit that it is not medically necessary for Plaintiff to have surgery to repair the hernia. Defendants deny all remaining allegations set forth under Roman Numeral V and demand strict proof thereof.

VI.   Prayer for Relief

6.   Defendants deny each and every prayer for relief set forth under Roman Numeral VI. Likewise, Defendants state that Plaintiff is not entitled to any of the requested relief. To the extent the Complaint makes any allegations of material fact, Defendants deny such allegations and demand strict proof thereof.

## AFFIRMATIVE OR OTHER DEFENSES

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred by the doctrine of contributory negligence and/or last clear chance.

### Third Defense

Plaintiff's claims are barred by the doctrine of assumption of risk.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of laches.

### Fifth Defense

Plaintiff's claims are barred by the statute of limitations.

### Sixth Defense

Plaintiff's claims are barred by the doctrine of waiver.

### Seventh Defense

The Court lacks subject matter jurisdiction over this dispute.

### Eighth Defense

This Court is the improper venue in which to assert this action.

### Ninth Defense

Plaintiff lacks standing to bring this action.

### Tenth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Eleventh Defense

Plaintiff's claims are barred by the doctrine of qualified immunity.

### Twelfth Defense

Plaintiff's claims are barred by the doctrine of sovereign immunity.

### Thirteenth Defense

Plaintiff's claims are barred by the doctrine of estoppel.

### Fourteenth Defense

Plaintiff's claims are barred by the doctrine of *res judicata* and/or collateral estoppel.

### Fifteenth Defense

Plaintiff's claims are barred, in whole or in part, because of his failure to mitigate damages.

### Sixteenth Defense

The Defendant avers that the wrongs and damages alleged by Plaintiff were caused solely by the acts and/or omissions of person and/or entities for whom or which Defendant is not responsible.

### Seventeenth Defense

Plaintiff's claims are barred because Defendant did not breach any duty Defendant allegedly owed to Plaintiff.

### Eighteenth Defense

Plaintiff's claims are barred because there is no casual relationship, legal or proximate, between Defendant's actions or failures to act and the Plaintiff's alleged injuries and damages.

### Nineteenth Defense

Plaintiff's claims are barred because of the existence of superseding, intervening causes.

### Twentieth Defense

Plaintiff's claims are barred because of the lack of damages suffered due to any of the alleged wrongs asserted against Defendant.

### Twenty-First Defense

Plaintiff has failed to exhaust or attempt to exhaust administrative remedies. 42 U.S.C. § 1997e(a) (2005).

### Twenty-Second Defense

Plaintiff's claims are barred because the action asserted is "frivolous, malicious, and fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1) (2005).

### Twenty-Third Defense

Plaintiff's claims are barred because no personal, physical injury has been alleged. 42 U.S.C. § 1997e(e) (2005).

### Twenty-Fourth Defense

Plaintiff's claims are barred because the injunctive relief sought is not sufficiently narrowly drawn. 18 U.S.C. § 3626(a)(1)(A) (2005).

### Twenty-Fifth Defense

Plaintiff's claims are barred because Defendants did not act with deliberate indifference. Estelle v. Gamble, 429 U.S. 97 (1976).

### Twenty-Sixth Defense

Plaintiff's claims are barred because of his failure to allege the existence of a serious medical condition.

### Twenty-Seventh Defense

Plaintiff's claims are barred because he is seeking to question a medical judgment via injunctive relief.

### Twenty-Eighth Defense

To the extent that Plaintiff's Complaint seeks monetary damages, a jury trial is requested to resolve those issues.

### Twenty-Ninth Defense

To the extent Plaintiff seeks to recover any attorneys' fees, Defendants object to any and all such requests for fees that are not asserted in the Complaint or otherwise approved by court order.

### Thirtieth Defense

Plaintiff's claims for punitive damages violate PHS' United States and Alabama constitutional protections from, including without limitation, excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the law.

### Thirty-First Defense

Defendants reserve the right to assert other defenses as discovery proceeds.

Respectfully submitted on this the 9th day of November 2005.

/S/ William R. Lunsford
One of the Attorneys for Defendants,
Jean Darbouze, M.D. and Prison Health Services, Inc.

**OF COUNSEL:**

David B. Block
William R. Lunsford
BALCH & BINGHAM LLP
Post Office Box 18668
Huntsville, AL 35804-8668
Telephone: (256) 551-0171
Facsimile: (256) 512-0119

85661.1

19

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I have mailed by United States Postal Service a copy of the foregoing document to the following non-CM/ECF participants on this the 9th day of November, 2005:

Earnest Edward Reed, Jr. (AIS # 111914)
Easterling Correctional Facility
200 Wallace Drive
Clio, Alabama 36017-2615


/S/ William R. Lunsford
Of Counsel