# EXHIBIT E
# DARBOUZE AFFIDAVIT
# November 9, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EARNEST EDWARD REED, JR. (AIS#111914), | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:05-CV-770-T |
| DR. JEAN DARBOUZE, *et al.*, | ) ) ) | |
| Defendants. | ) | |

### AFFIDAVIT OF DR. JEAN DARBOUZE

**STATE OF ALABAMA** )
)
**COUNTY OF BARBOUR** )

Before me, the undersigned Notary Public, personally appeared DR. JEAN DARBOUZE who, after being duly sworn, states as follows:

1. My name is Dr. Jean Darbouze. I am over the age of nineteen (19) years and have personal knowledge of the information contained in this affidavit.

2. I have been a licensed physician in Alabama since 1996 and have been board certified in internal medicine since 1997. From February of 2000 through February of 2004, and again from April 16, 2004 through the present, I have served as the Medical Director for Easterling Correctional Facility ("Easterling") in Clio Alabama. Since November 3, 2003, I have been employed by Prison Health Services, Inc. ("PHS") as the Medical Director at Easterling.

3. Since December 12, 2003, Earnest Edward Reed, Jr. ("Reed") has been incarcerated at Easterling.

4. When an inmate has a non-emergency medical or health problem and/or complaint, an inmate may file a sick call request form in order to bring this problem or complaint to the attention of the medical staff at Easterling and/or request medical treatment for this problem. The sick call request process is well-known at Easterling and is utilized by inmates at Easterling on a daily basis. When an inmate first arrives at Easterling, he is taken to the Health Care Unit to be processed into the system and receives an orientation as to the availability of medical services at the facility as well as the procedures for obtaining medical care. During this orientation, the medical staff gives each inmate an information sheet and verbally goes through the sheet with newly-arriving inmates, informing them how to utilize the sick call request form process. Sick call request forms are available in the Health Care Unit at the shift commander's station or may be obtained from the Alabama Department of Corrections ("ADOC") officer in each dorm at Easterling. An inmate making a sick call request is required to complete the top portion of the sick call request form (stating his name, the date of request, AIS number, date of birth, dorm location, the nature of the problem or request and his signature) and submit the sick call request form by placing it in a locked box located outside the facility's kitchen (i.e., chow hall). The sick call request forms are removed from the locked box each day and brought to the Health Care Unit. Upon retrieving the sick call request forms, the medical staff compiles a list of inmates having submitted a sick call request form, which is sent to the various dorms at Easterling. Easterling conducts sick call five (5) times per week, Sunday through Friday excluding holidays or unexpected emergencies. Sick call begins at 7:00 p.m. and lasts as long as required to examine all the inmates who report to sick call. Inmates who submit sick call request forms are responsible for reporting to the Health Care Unit for evaluation of their complaints at the time they are summoned to the Health Care Unit for sick call. The number of inmates

2

reporting to sick call each day varies between approximately ten (10) and thirty-five (35). The nurse conducting sick call takes reporting inmates' vital signs and either: (1) provides an inmate with medical treatment that can be provided under the nursing protocols, or (2) refers the inmate to the physician or nurse practitioner on staff at Easterling. If the inmate fails to report to sick call when summoned, this is often indicated in the sick call request form because it is left blank by the medical staff. If the medical complaints or problems identified by an inmate in a sick call request form appear to be urgent or life-threatening, the medical staff will immediately have the inmate brought to the infirmary (located within the Health Care Unit) and the inmate will be examined and treated by a physician.

5. On June 27, 2005, Reed submitted a sick call request form, complaining about pain associated with his abdominal hernia. The medical staff at Easterling received this sick call request form on June 28, 2005. Reed was examined and evaluated during sick call by a member of the medical staff at Easterling. At the conclusion of Reed's examination and evaluation during sick call, the medical staff member conducting sick call referred Reed to see a physician and also directed Reed to take 500 milligrams of Tylenol twice a day for a period of five (5) days.

6. When medication is ordered and administered to inmates at Easterling, the medical staff utilizes a document entitled "MEDICATION ADMINISTRATION RECORD" (commonly referred to as "MARs") to record the name and dosages of the medication, the expiration date of the order and the administration of the medication to the inmate. As indicated in the MARs contained in Reed's medical records, Reed received Tylenol at 4 a.m. and 4 p.m. on June 27, 28 and 29, 2005, as well as July 1 and 2, 2005, as ordered during the June 28, 2005, sick call. On each of these dates, a member of the medical staff at Easterling who was conducting pill

call signed Reed's MARs, acknowledging that Reed had received and taken the Tylenol. Reed did not continue taking Tylenol after July 2, 2005, because he did not have any current order for Tylenol after that date.

7. On or about July 7, 2005, I saw Reed for evaluation of his complaints regarding his abdominal hernia. During my examination of Reed, he mentioned he was experiencing some discomfort related to this abdominal hernia. In order to alleviate this discomfort, I ordered Reed to take two (2) tablets of Percogesic three times a day for a period of fourteen (14) days. Percogesic contains acetaminophen which reduces fever and provides temporary relief of such minor aches and pains as headaches, muscular aches, backaches, toothaches, menstrual discomfort and arthritis. In short, Percogesic contains the same ingredients found in medication Tylenol PM. Based upon my medical judgment, I believed it was in Reed's best interest to receive Percogesic to relieve his discomfort. Reed did not request any other pain medication or request that I provide him with an order for Tylenol. As indicated in Reed's MARs, he began taking Percogesic at 4:00 p.m. on July 7, 2005. Between July 7, 2005, and July 21, 2005, Reed received his Percogesic as prescribed at 4:00 a.m., 9:00 a.m. and 4:00 p.m. pill call.

8. Because of the large number of inmates at Easterling who receive Tylenol on a regular basis, the medical staff at Easterling maintains a significant supply of Tylenol on hand at Easterling. During June and July, 2005, the medical staff at Easterling did not "run out" of Tylenol.

9. From June 27, 2005 to October 14, 2005, Reed did not submit any sick call request form requesting any additional pain medication and/or an order for Tylenol. Between October 14, 2005, and January 22, 2004, Reed submitted a total of fifteen (15) sick call request forms, requesting medical treatment for various medical conditions. Reed has not at any time

(prior to or subsequent to the filing of his lawsuit) filed any sick call request form requesting pain medication and/or a renewal of his order for Tylenol.

10. On or about October 14, 2005 and October 16, 2005, Reed submitted his first sick call request forms in over three (3) months, complaining of discomfort associated with his abdominal hernia. During the previous three (3) months, Reed did not notify me or the medical staff of any symptoms or discomfort associated with or arising from his abdominal hernia. At the time I evaluated Reed on or about October 17, 2005, I ordered him to take 400 mg of Advil to alleviate any discomfort related to his abdominal hernia. Additionally, I ordered Reed to take Percogesic twice a day for thirty (30) days. Since October 17, 2005, Reed has received this medication, as prescribed by me. If Reed's abdominal discomfort should not be alleviated by this medication and/or his discomfort continues beyond the thirty (30) day prescription of Percogesic, Reed may file a sick call request at any time requesting that I re-evaluate his condition and/or provide additional medication. As of the date of this affidavit, Reed has not submitted any sick call request form or any other request of any kind since October 16, 2004, requesting additional and/or different medication.

11. Reed has not submitted any grievance regarding any request for Tylenol and/or other pain medication and/or his claim that he was denied Tylenol.

12. Based upon my understanding of Reed's medical condition (both past and present) and the treatment he has received as of this date, it is evident that Reed has received timely and appropriate medical care. I have not at any time ignored any request by Reed for medical treatment. I have not deliberately ignored Reed's medical complaints or refused to provide Reed with any necessary medical treatment. I have not taken any action which has caused Reed to experience any unnecessary pain and/or suffering. Throughout the period of time

5

that I have evaluated Reed and his medical complaints and provided treatment for those complaints, and I have provided him with all necessary and appropriate medical treatment.

Further affiant saith not.

_____
Dr. Jean Darbouze

SWORN TO and SUBSCRIBED before this the 9th day of November, 2005.

_____
Notary Public
My Commission Expires: My Commission Expires 2-26-06

(SEAL)